## SISK v. WHITE OAK LUMBER CO.

(District Court, W. D. Virginia. August 11, 1926.)

1. Railroads ⬥478(2)—Complaint against railroad for fire loss caused by act of employee held insufficient.

The complaint in an action against a railroad company to recover for a loss from fire alleged to have been caused by the wrongful act of an employee of defendant *held* insufficient, where it did not allege that the employee was negligent, or that his act was within the scope of his duties.

2. Railroads ⬥224—Statute making "any railroad company" liable for loss from fire held inapplicable to lumber company operating private railroad (Code Va. 1919, § 3992).

Code Va. 1919, § 3992, making "any railroad company" liable for loss from fire caused by its engines, regardless of negligence, does not apply to the owner or operator of a private railroad, operated as an incident to other business, as a lumber company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Railroad Company.]

At Law. Action by William H. Sisk against the White Oak Lumber Company. On demurrer to plaintiff's pleading. Demurrer sustained.

Chase & McCoy, of Clintwood, Va., for plaintiff.

Burns & Kidd, of Lebanon, Va., and H. Claude Pobst, of Grundy, Va., for defendant.

McDOWELL, District Judge. This is an action at law to recover damages for the destruction of the plaintiff's home by fire, alleged to have been occasioned by sparks thrown from the defendant's train. The first two counts of the plaintiff's original pleading are based solely on the statute of 1908, infra. In the third count the injury is alleged to have been caused by the wrong of some unnamed employees of the defendant.

[1] The demurrer relates only to the original notice of motion. Under the common law the first two counts are insufficient, as they do not allege negligence, and the third count is insufficient because it does not allege either negligence or that the act complained of was within the scope of the employees' duty.

[2] On March 13, 1908 (Acts 1908, p. 388, c. 269), the Legislature enacted the following statute:

"Chapter 269.

"An act to make railroad companies liable for damage from fire occasioned from sparks or coals thrown from their engines or trains, whether such fire originate on the railroad's right of way or not, and regardless of the use or condition of spark-arresting appliances.

"Approved March 13, 1908.

"1. Be it enacted by the General Assembly of Virginia, that whenever any person shall sustain *damage from fire occasioned by* sparks or coals dropped or thrown from the engine or train of any railroad company, such company shall be liable for the damage so sustained, whether said fire shall have originated on said *company's right of* way or not, and whether or not such engine is equipped with proper spark-arresting appliances, and regardless of the condition in which such appliances may be."

This statute has been carried into Code 1919 as section 3992. The defendant is not alleged to be a railroad company, and in the brief for plaintiff it is admitted that the defendant is not a public service corporation. The admission reads.

"The defendant is the owner of and is operating 15 or 20 miles of standard gauge railroad in the counties of Buchanan and Russell, as set out in the notice of motion, but this railroad is not a common carrier, and the defendant is also engaged in the lumber business with a large band mill in Russell county."

I am unable to think of any reason for an intent to exclude receivers and trustees operating public service railroads from the operation of the act of 1908. If I am not greatly mistaken, lawyers and laymen alike usually make distinction between company and receiver, and between company and trustee. That there is some explanation of the use of the inadequate phrase "railroad company" in the act of 1908, other than mere thoughtlessness, seems quite probable; and I believe the explanation is found in the fact that in a well-known statute of 1904 (Acts 1902–4, pp. 968, 969), which relates only to public service corporations, the phrase "railroad company" is defined as including "any company, trustee or other persons owning, leasing, or operating *a railroad.* * * *" The railroads in contemplation in the act of 1904 were public service railroads, and the phrase "railroad companies," as used in that stat-

ute, meant the persons owning, leasing, or operating public service railroads. Presumably legislators are familiar with prior legislation, and it is at least probable that the phrase "railroad company," as used in the act of 1908, was used with the meaning given this phrase in the act of 1904.

Again, unless good reason exists for a different construction, it is a canon of statutory construction that the words of a statute are to be given their commonly accepted meaning. In common usage, lumber companies, mining companies, and quarry companies, which operate railroads as incidental to their chief business, are not referred to as railroad companies. A "railroad company," in ordinary usage, is a company which is principally engaged in operating a railroad.

Again, a privately operated railroad could represent a sufficiently small investment to be owned by a single individual or by a partnership. If private railroads, operated by lumber and mining companies, were intended to be included by the act of 1908, there could be no sufficient reason for an intent to exclude from the operation of the statute private railroads operated by individuals or by partnerships; and yet the phrase "railroad company" does not include an individual, although operating a private railroad, and it is highly doubtful if a partnership is included.

If the phrase in question in the act of 1908 was not taken from and used in the sense given it in the act of 1904, and if it is to be given its ordinary signification, the operators of private railroads are not embraced by the act of 1908. They could have been purposely omitted, or they could have been simply unthought of; it is not important to ascertain which. If they were purposely omitted, the discussion is ended. If they were inadvertently omitted, the courts cannot supply the omission.

It begs the question to assert that privately operated railroads are within the purpose sought to be accomplished by the act of 1908. If the statute was intended to affect only public service railroads, or if privately operated railroads were either purposely omitted or not thought of, it is wholly untrue that privately operated railroads are within the purpose sought to be accomplished.

The act of 1908 makes the railroad companies to which it applies responsible for the injury caused by any fire which is caused by their engines or trains, without regard to negligence. This legislation is so radical a

change of the common law that it is properly described as revolutionary. To such a statute the language used in Thompson v. Thompson, 218 U. S. 611, 618, 31 S. Ct. 111, 112 (54 L. Ed. 1180, 30 L. R. A. [N. S.] 1153, 21 Ann. Cas. 921), is fairly applicable: "Conceding it to be within the power of the Legislature to make this alteration in the law, if it saw fit to do so, nevertheless such radical and far-reaching changes should only be wrought by language so clear and plain as to be unmistakable evidence of the legislative intention."

It seems to me that the expression "railroad company" does not unmistakably evidence a legislative intention to include those who own or operate private railroads as an incident to some other business. I think the demurrer to the original pleading should be sustained.